### RIPLEY v. FINDLAY GALLERIES, Inc., et al.

No. 8883.

Circuit Court of Appeals, Seventh Circuit.

June 11, 1946.

Rehearing Denied July 9, 1946.

---

Charles B. Cannon, of Chicago, Ill. (Wallace & Cannon, of Chicago, Ill., of counsel), for appellant Findlay Galleries, Inc.

Samuel Topliff, of Chicago, Ill. (Topliff & Horween, of Chicago, Ill., of coun-

sel), for appellant Goes Lithographing Company.

Cedric W. Porter and George P. Dike, both of Boston, Mass. (Dike, Calver & Porter, of Boston, Mass., and C. B. Spangenberg and Dawson, Booth & Spangenberg, all of Chicago, Ill., of counsel), for appellee.

Before SPARKS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Appellants challenge the propriety of a judgment of the District Court holding that they had unlawfully brought about the reproduction of one of appellee's paintings and requiring appellants to account to appellee for gains and profits.

Appellee (plaintiff below) is an artist residing in the state of Massachusetts. Appellant, Findlay Galleries, Inc. (one of the defendants below), is an Illinois corporation engaged in conducting an art gallery. Goes Lithographing Company (one of the defendants below) is an Illinois corporation engaged in commercial lithography. The parties will hereinafter be referred to as plaintiff and defendants, as they appeared in the trial court. Jurisdiction is conceded.

In January, 1942, plaintiff consigned to defendant Findlay, as his agent, 11 of his productions for the purpose of exhibition and sale, including among them a water color entitled "Three Grouse in Snow," which painting is the only one involved in this proceeding. The price fixed for the sale of this painting was $300 with $100 to be retained by Findlay as its commission. Findlay exhibited the various paintings and offered them for sale, but apparently without success. On March 14, 1942, it wrote plaintiff a letter [1] advis-

---

[1] "March 14, 1942

"Mr. A. Lassell Ripley

"52 Totten Road

"Lexington, Mass.

"Dear Mr. Ripley:

"We recently hung an interesting watercolor show, which included some of your work, and while we had a great many people come in I am sorry to say we made no sales of your paintings.

"However, we have a client who is an important lithographer, who for the last few years has done the calendars for the Milwaukee Journal. He was very much interested in your work, and inasmuch as this year they are going to use a calendar of this type of subject he suggested that we write you to see if it would be agreeable to use any of your watercolors or etchings, or even he might want you to do something especially for them.

ing that it had not been able to make any sales of the paintings and inquiring if plaintiff would be interested in having it sell any of his water colors for reproductions. ·On March 16, 1942, plaintiff replied[2] that he had no objection to selling one of his pictures for reproduction. On or about April 6, 1942, defendant Findlay sold the painting in question, .without reservation to defendant Goes, and Goes proceeded to and did reproduce and sell the same commercially. Plaintiff asserts that this sale of the painting to Goes and its reproduction were unauthorized and after learning of its reproduction he filed on or about September 25, 1943, an application for registration of the painting in the office of the register of copyrights and received a certificate of registration therefor. Plaintiff asserts that the conduct of both defendants was an infringement of his common law copyright in the painting as well as his statutory copyright. It is to be noted that his statutory copyright was obtained long after the sale to and reproduction by Goes, but plaintiff's position in this respect is bottomed upon the assertion that such sale and reproduction were unauthorized and, therefore, wrongful. The painting was sold to Goes for the sum of $300 with a further condition that Findlay would for itself repurchase the painting upon request by Goes and give him credit on other paintings for the sum of $150. Goes paid Findlay the sum of $300 and later returned the painting to Findlay and received $150 credit upon the purchase of other paintings. Findlay did not at once remit to plaintiff the $200 that was due him on the sale, but later, upon inquiry by plaintiff, offered to buy for itself from plaintiff the painting in question at the price of $200, the net price to the artist, and did later pay plaintiff $200. Defendant Findlay explains its failure to promptly remit to the artist upon payment by Goes and its later rather unusual correspondence with the plaintiff in reference to the purchase of the painting long after it had in fact been sold to Goes, by the fact that one of its employees, Priestly by name, had consummated the sale to Goes and had later, during an extended absence from his Chicago office of Mr. Findlay, the president of Findlay Galleries, Inc., absconded with a large sum of money, apparently including the $300 received from Goes. Mr. Findlay asserts, that he was not fully aware of the arrangement concerning the painting in question or its exact whereabouts at the time of plaintiff's inquiry and at the time of the correspondence relative to its purchase by defendant Findlay.

Defendants contend that the sale by Findlay to Goes was fully authorized by plaintiff's letter of March 16th, 1942, and that the same was properly sold to and reproduced by Goes, and that the application of·plaintiff for a statutory copyright

---

"This calendar is really a very artistic thing, and is known throughout the newspaper world as one of the finest works of art of its kind, and very little advertising copy is used with it. Last year, for instance, they had Dale Nichols do something for them, and each year they have had top-notch American artists.

"We are writing to see if you might be interested in having us sell any of your watercolors for reproductions. Would appreciate an answer by return Air Mail if possible so that we might contact our customer promptly.

"We are looking forward to doing some business for you, and certainly enjoy and appreciate having your work.

"Very truly yours,
"Findlay Galleries, Inc.
"Edwin W. Priestley" .

[2]         "52 Follen Road
        "Lexington, Mass.
"Dear Mr. Priestley;

"I have no objection to selling one of my pictures for reproduction especially if it is well reproduced. As you mentioned that your client inquired about etchings as well as water colors I assume that he was interested in my sporting things. In regard to using an etching, I shouldn't think it would not be worth while to sell a single print for that purpose. I would rather sell your client a water color and if he would rather have me do something especially for him I think I could do it. In this case I should ask a slightly higher price.

"My address should be Follen Road instead of Totten.

"Thanks for writing to me,
        "Sincerely yours,
"March 16, 1942   Aiden Lassell Ripley"

after such sale and reproduction was improper and invalid.

■ Whether the sale, on April 6, 1942, was authorized, and if authorized just what it conveyed to Goes is to be determined by the construction to be placed upon Findlay's letter of March 14, 1942, and plaintiff's reply thereto of March 16, 1942, when considered in the light of the previous arrangement between the parties. It is to be remembered that before the exchange of these letters plaintiff had consigned the painting in question to Findlay and made Findlay his agent for the purpose of sale at the stipulated sum of $300 without express reservation of any kind or character. Then in March after an unsuccessful effort to sell the paintings, the agent inquired of the artist whether he would be interested in selling any of his water colors for reproduction. While the letter of inquiry refers also to a lithographer who had been doing reproductions for calendars for the Milwaukee Journal, yet we think a fair construction to be placed on the letter is not one limited to the inquiry of whether he would be willing to have his paintings reproduced for the Milwaukee Journal, but rather one of general inquiry of whether the agent Findlay would be authorized to sell any of his water colors for reproduction generally. Plaintiff's reply two days later saying that "I have no objection to selling one of my pictures for reproduction, especially if it is well reproduced," is well nigh unlimited in its authority to the agent, there being no contention that it was not "well reproduced." The authority to sell had already been vested in the agent several months previously, and even though it may have already possessed sufficient authority to sell for reproduction, as now contended, yet the inquiry of March 14th may in any event be treated as a courteous inquiry of plaintiff for clarification of the scope of the agent's authority. With the authority already concededly vested in the agent for sale for all purposes except reproduction, plaintiff by his letter of March 16th removes this supposed reservation by most explicit language. It, therefore, seems inescapable that the proper construction to be placed upon these two letters is that Findlay was authorized by plaintiff to sell any of the paintings theretofore consigned even to one who desired to reproduce same and to pass complete title thereto without reservation.

■ If this be the proper construction to be placed upon the two letters, then the sale to Goes being fully authorized, title to the painting passed and reproduction by Goes was entirely proper. That title to the painting again passed at a later date to Findlay under its contract with Goes is unimportant. The subsequent maneuvering of Mr. Findlay when confronted with a more or less embarrassing situation in his own business by virtue of the misconduct of his employee, followed by his arrangement to purchase the painting from plaintiff for $200 is, likewise, without special significance as Findlay, Inc., at that time owned the painting by virtue of its repurchase from defendant Goes. Findlay was indebted to plaintiff in the sum of $200, but nothing more than a debtor-creditor relation existed between them at that time, insofar as "Three Grouse in Snow" is concerned. Neither do we need to consider the important case of Pushman v. New York Graphic Society, 287 N.Y. 302, 39 N.E.2d 249, or the many other authorities on the question of whether in selling or authorizing the sale of a picture without reservation the reproduction rights are included; or, conversely, whether the reproduction rights follow the sale unless expressly reserved by the artist. There are respectable authorities upon both sides of this much argued and briefed question, but it becomes unimportant in our case, because of our holding of express authority for an unrestricted sale. Neither is the question of custom among artists important in our case for custom, whatever it be, must yield to express authority. Whether Findlay was morally excused by reason of his misinformation or lack of information in his apparent deception of the plaintiff after the sale had been made to Goes is not now material. If title passed as we believe then only an obligation remained for Findlay to remit to plaintiff the sum of $200, the net proceeds of the sale. When Findlay did subsequently pay the sum of $200 to plaintiff although

supposedly on another basis this extinguished the obligation to plaintiff.

■ There being no substantial dispute in the evidence, we are constrained to hold that the lower court has placed an erroneous interpretation on the two letters in question. Holding as we do that the entire matter turns upon the authority to the agent and that the letters constitute complete authority to Findlay for the sale without reservation, it follows that if plaintiff had any common law copyright it passed under the sale and the subsequent application for a statutory copyright was made by plaintiff under a misconception of his rights and is invalid. 17 U.S.C.A. § 1 et seq. Under the circumstances, we think plaintiff's complaint is without merit. No affirmative relief is deemed necessary under the cross complaint. The judgment of the lower court is reversed and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.